FILED
2015 Jan-06  AM 11:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| C O N N I E   E L I Z A B E T H  STRICKLAND, | ) ) ) |
| Claimant, | ) ) |
| vs. | ) ) ) |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) ) |

Case No. 6:14-cv-0742-CLS

## MEMORANDUM OPINION AND ORDER

Claimant, Connie Elizabeth Strickland, commenced this action on April 22, 2014, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability and disability insurance benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered the medical evidence of record, failed to properly develop the administrative record by ordering a consultative examination, or by recontacting claimant's treating physician in order to explain an inconsistency, and improperly evaluated claimant's fibromyalgia. Upon review of the record, the court concludes that these contentions lack merit, and that the Commissioner's ruling is due to be affirmed.

Claimant first argues that the ALJ erred in rejecting the opinion of Dr. Kimberly Balasky, claimant's family practice physician. The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner."

2

20 C.F.R. § 416.927(d).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate:   the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(c).  *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Balasky completed a "Statement of Treating Physician" form on April 19, 2012.  Dr. Balasky stated that claimant had been diagnosed with lupus and joint pain, and her symptoms included joint pain, anxiety, hypertension, and reflux.  Dr. Balasky indicated that claimant occasionally experienced pain severe enough to preclude the level of attention and concentration necessary to perform simple work tasks.  Claimant could perform only low stress jobs.  She could walk one city block without rest or severe pain.  Dr. Balasky did not indicate how long claimant could sit, stand, or walk at one time, or the total amount of time claimant could perform those

3

functions during an eight-hour workday.  Instead, Dr. Balasky indicated that claimant would need to alternate among the physical functions of sitting, standing, and walking.  Claimant would frequently need to take unscheduled, thirty-minute breaks during the workday, but she would not need an assistive device to ambulate. Claimant could rarely lift less than ten pounds, and she could never lift more than ten pounds.  She could frequently look down, turn her head right or left, look up, and hold her head in a static position.  She could never climb ladders, rarely crouch and climb stairs, and occasionally twist and stoop.  Claimant would have significant limitations in performing repetitive reaching, handling, and fingering.  There were no limitations on the amount of fine manipulation she could perform with her fingers, but she could use her hands to grasp, turn, and twist objects only fifty percent of the time during an eight-hour workday, and she could use her arms to reach overhead only thirty percent of the time.  Claimant's impairments would produce "good days" and "bad days," resulting in her being absent from work about three days each month due to her conditions.  Claimant also would have a reasonable need to lie down for significant periods of time during a work day to assist in pain control.  Finally, Dr. Balasky indicated that claimant's impairments were reasonably consistent with the symptoms and functional limitations claimant had described.[1]

Dr. Balasky also completed a Clinical Assessment of Pain form on April 13,

---

[1] Tr. 326-31.

2012.  She indicated that claimant experienced pain to such an extent as to be distracting to adequate performance of daily activities and/or work.  Physical activity would increase claimant's pain to such an extent that bedrest and/or medication would be necessary.  Claimant's medications would cause significant side effects that could limit the effectiveness of her work duties or the performance of daily tasks like driving.  Due to claimant's pain and prescribed medication, she would be totally restricted and unable to function at a productive level in her previous work.  Little improvement was expected in claimant's condition, and, in fact, her pain was likely to worsen with time.[2]

The ALJ assigned Dr. Balasky's opinion only little weight because it was inconsistent with claimant's medical records.  Specifically, even though Dr. Balasky stated that claimant had tested positive for lupus, she never actually received a lupus diagnosis.  Instead, Dr. Karin Straaton, a treating rheumatologist, stated only that some laboratory results from November 18, 2010 "could mean lupus."[3]  Additionally, Dr. Richard E. Jones, another treating rheumatologist, stated that he did not believe that she had lupus because, despite the presence of antinuclear antibodies ("ANA's") in her blood, all of her other antibodies were negative.[4]  It was proper for the ALJ to

---

[2] Tr. 223-25.

[3] Tr. 205.

[4] Tr. 291.

assign more weight to the records of Dr. Straaton and Dr. Jones, who are specialists in the field of rheumatology, than he assigned to the statement by Dr. Balasky, a general practitioner, that claimant had lupus.  *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Moreover, the record supports the ALJ's decision.

The ALJ also reasoned that Dr. Balasky's opinion was inconsistent with a statement by Dr. Jones that claimant did not experience disabling pain.  On March 30, 2012, Dr. Jones completed the same Clinical Assessment of Pain form that Dr. Balasky later completed on April 13.  Dr. Jones indicated that claimant did experience pain, but not to such a degree as to prevent functioning in everyday activities or work. Physical activity would cause some increase in claimant's pain, but not to such an extent as to prevent adequate functioning.  Claimant would experience significant side effects from her pain medications that might limit the effectiveness of her work duties or the performance of everyday tasks like driving.  Claimant's pain and/or medication side effects would be expected to be severe and to limit her effectiveness *in her previous work* due to distraction, inattentiveness, and drowsiness.  For a long-term prognosis, claimant could expect her pain to be less intense or less frequent in the future, but the pain would nonetheless remain a significant element in her life.[5]

---

[5] Tr. 394-95.

The ALJ afforded great weight to Dr. Jones's opinions that claimant's pain did not prevent functioning, and that physical activity would not exacerbate claimant's pain to a level that would prevent functioning, because those opinions were "consistent with the claimant's reported daily activities."[6]  On the other hand, the ALJ assigned no weight to Dr. Jones's opinion that the side effects of claimant's medications would prevent her from working, because that opinion was "not supported by [Dr. Jones's] own treatment records or any of the claimant's other treatment records."[7]

The court concludes that the ALJ adequately articulated his reasoning for the weight he assigned to the different medical opinions in the record.  It was permissible for the ALJ to credit Dr. Jones's opinion about the extent of claimant's pain over Dr. Balasky's, and substantial evidence supported the ALJ's decision.  Even though Dr. Jones's records reflect claimant's consistent complaints of pain, they do not reflect any disabling *functional* limitations.[8]  It also was permissible for the ALJ to discredit the portions of Dr. Jones's opinion that addressed the limiting side effects of claimant's medications.  Dr. Jones may have concluded that claimant's medications were of the type that often cause side effects, but there is no indication in Dr. Jones's records, or in the records of any other treating provider, that claimant complained of

---

[6] Tr. 30.

[7] *Id.* (alteration supplied).

[8] *See* Tr. 285-307, 392.

7

significant medication side effects.   Moreover, Dr. Jones stated that claimant's medications would limit her effectiveness *in her previous work*.  He said nothing about how her medications would affect her ability to do *other* jobs.

Claimant also asserts that the ALJ should have should have recontacted Dr. Balasky to "explain the inconsistency in the record" about whether claimant actually suffered from lupus.[9]  *See* 20 C.F.R. § 404.1520b(c)(1) (stating that the Commissioner may recontact a treating source to resolve inconsistencies in the medical evidence). There was no need to do that in this case, however, because, as discussed above, the ALJ properly credited the opinion of claimant's treating rheumatologists that claimant did not have lupus over the opinion of her family practice physician that she did have that condition.

Next, claimant argues that, "[h]aving rejected the opinions of . . . all of the medical experts, the ALJ assigned [claimant's residual functional capacity] based upon his own lay understanding."[10]  As discussed above, the ALJ's decisions about what weight to assign to the various medical opinions in the record were in accordance with applicable law and supported by substantial evidence.  According to claimant, the ALJ should have ordered a additional consultative examination after rejecting the treating physician opinions.  But that was not necessary either.  It is true

---

[9] Doc. no. 12 (claimant's amended brief), at 13.

[10] *Id.* at 14 (alterations supplied).

8

that the ALJ

> has an obligation to develop a full and fair record, even if the claimant
> is represented by counsel. *Cowart v. Schweiker,* 662 F.2d 731, 735
> (11th Cir. 1981). [Even so, the] ALJ is not required to seek additional
> independent expert medical testimony before making a disability
> determination *if the record is sufficient and additional expert testimony
> is not necessary for an informed decision. Wilson v. Apfel,* 179 F.3d
> 1276, 1278 (11th Cir. 1999) (holding the record, which included the
> opinion of several physicians, was sufficient for the ALJ to arrive at a
> decision); *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988)
> (holding the ALJ must order a consultative exam when it is necessary
> for an informed decision).

*Nation v. Barnhart,* 153 F. App'x 597, 598 (11th Cir. 2005) (emphasis and alteration

supplied). Furthermore, claimant bears the ultimate burden of producing evidence

to support her disability claim. *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th

Cir. 2003) (citing 20 C.F.R. §§ 416.912(a), (c)). The court concludes that the record

in this case was sufficient, even without a consultative examination report, for the

ALJ to arrive at an informed decision. Even though the ALJ rejected some of the

*opinions* of claimant's treating physicians, there still was ample medical evidence, in

the form of treatment notes and records, to support the ALJ's decision.

Finally, claimant asserts that the ALJ "failed to follow the prescription of

Social Security Ruling 12-2p in evaluating [her] fibromyalgia."[11]  The ALJ listed

"possible fibromyalgia" as one of claimant's severe impairments,[12] presumably based

---

[11] *Id.* at 15 (alteration supplied).

[12] Tr. 21, 25.

upon a statement by Dr. Jones's nurse practitioner on March 5, 2012, that there was a "possible diagnosis of fibromyalgia."[13]  Claimant was familiar with fibromyalgia as a condition because her aunt suffered from it, and she arrived at her appointment with the nurse practitioner that day asking whether she might also have fibromyalgia.[14]  The nurse practitioner stated that she and claimant "discuss[ed] the disease process of fibromyalgia and the current treatment options," and claimant was sent home with some medication samples.[15]  There was never a definitive diagnosis of fibromyalgia, or even an indication that the nurse practitioner believed that claimant suffered from fibromyalgia.  Instead, there is only a notation of claimant's subjective belief that she might have fibromyalgia, and a record of the nurse practitioner discussing that condition with her.  Claimant appears to question the ALJ's finding of only *possible* fibromyalgia based on a statement by Dr. Jones on June 21, 2012 that "[t]his is a follow-up case of fibromyalgia."[16]  Dr. Jones went on to discuss claimant's complaints, but the portion of his treatment notes where he ordinarily would list claimant's diagnoses is missing.  Thus, it is impossible to discern from the current record whether Dr. Jones actually believed that claimant suffered from fibromyalgia, or whether he, like the nurse practitioner, made that

---

[13] Tr. 286.

[14] Tr. 285.

[15] Tr. 286 (alteration supplied).

[16] Tr. 392 (alteration supplied).

notation in reliance upon claimant's subjective complaints and suspicions.

Although claimant does not actually articulate this argument in her brief, the court presumes she is relying upon Social Security Ruling 12-2p to assert that the ALJ should have either recontacted Dr. Jones or ordered a consultative examination in order to definitively determine whether she actually suffered from fibromyalgia. The relevant portions of the Ruling provide:

> C. When There Is Insufficient Evidence for Us To Determine Whether the Person Has an MDI [Medically Determinable Impairment] of FM [Fibromyalgia] or Is Disabled
>
> > 1. We may take one or more actions to try to resolve the insufficiency:
> >
> > > a. We may recontact the person's treating or other source(s) to see if the information we need is available;
> > >
> > > b. We may request additional existing records;
> > >
> > > c. We may ask the person or others for more information; or
> > >
> > > d. If the evidence is still insufficient to determine whether the person has an MDI of FM or is disabled despite our efforts to obtain additional evidence, we may make a determination or decision based on the evidence we have.
> >
> > 2. We may purchase a consultative examination (CE) at our expense to determine if a person has an MDI of FM or is disabled when we need this information to adjudicate the case.
> >
> > > a. We will not purchase a CE solely to determine if a person has FM in addition to another MDI that could

account for his or her symptoms.

b. We may purchase a CE to help us assess the severity and functional effects of medically determined FM or any other impairment(s). If necessary, we may purchase a CE to help us determine whether the impairment(s) meets the duration requirement.

c. Because the symptoms and signs of FM may vary in severity over time and may even be absent on some days, it is important that the medical source who conducts the CE has access to longitudinal information about the person. However, we may rely on the CE report even if the person who conducts the CE did not have access to longitudinal evidence if we determine that the CE is the most probative evidence in the case record.

SSR 12-2p, at *4-5 (alterations supplied, footnotes omitted). As discussed above, in this case, there was sufficient evidence in the record for the ALJ to reach an informed decision about claimant's disability status, and it was not necessary for the ALJ to either recontact claimant's treating physicians or order a consultative examination. In any event, even if claimant had received a definitive diagnosis of fibromyalgia, there is no indication that the condition actually produced disabling functional limitations. *See* SSR 12-2p, at *5-6 (providing that the functional effects of a claimant's fibromyalgia should be considered just like those resulting from any other impairment in determining the claimant's residual functional capacity as part of the five-step sequential evaluation process).

In summary, the court concludes the ALJ's decision was based upon substantial

evidence and in accordance with applicable legal standards.   Accordingly, the

decision of the Commissioner is AFFIRMED.  Costs are taxed against claimant.  The

Clerk is directed to close this file.

DONE this 6th day of January, 2015.

_____

United States District Judge